**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 02-cv-01188 REB-MEH

SUSANN STALCUP,
CRAIG LEWIS, and
SHARON LEWIS,

Plaintiffs,

v.

SCHLAGE LOCK COMPANY, and
INGERSOLL-RAND COMPANY,

Defendants.

## ORDER AWARDING ATTORNEY FEES AND EXPENSES

**Blackburn, J.**

This matter is before me on **Unopposed Motion for Class Counsels' Attorney Fees and Reimbursement of Litigation Expenses** [#257], filed September 22, 2006. No objections to this motion have been filed with the court. The motion is granted.

### A.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332.

### B.  BACKGROUND

In the Summer of 2000, lead counsel for the plaintiff class in this case began representing residential real estate owners in the Fountain Valley, located in southern El Paso County, Colorado, in relation to a plume of contaminated groundwater that allegedly had migrated to an area beneath land that is owned my members of the plaintiff class. The area in question is predominantly a residential area. Investigation

disclosed that the contamination plume began at the Schlage Lock Company Facility which is located on a hill above the neighborhood where the class members reside. A series of public meetings were held that Fall, and litigation first was commenced in this court on September 8, 2000, in a case called **Bushong v. Schlage Lock, Inc., et. al.**, 00 cv-01787-REB-OES.  Since then, lead counsel has represented the residents of this neighborhood in several different lawsuits filed in this court and in state court.  Because of the identical liability issues, counsel for the parties agreed that all discovery and issues pertaining to individual cases would be admissible in all proceedings, and this court concurred with that agreement.

      Each of these cases had a primary goal of requiring Schlage Lock Company and it's parent, Ingersoll-Rand Company, to pay for class-wide property testing for the presence of chlorinated solvents and, if the substances were found within the indoor air, to pay for appropriate remediation.  The plaintiff class also sought relief in the form of disgorgement of profits, compensatory damages, and punitive damages.  On September 28, 2004, I entered an order [#136] certifying a plaintiff class and appointing lead counsel for the plaintiff class.  After more than six years of litigation, the goal of having the defendants provide property testing and, if necessary, remediation has been achieved via a settlement agreement with the defendants.  The settlement does not provide for the payment of damages to the plaintiff class.  In an order issued concurrently with this order, I have approved a class action settlement agreed to by the lead plaintiffs and the defendants.  The terms of the settlement are contained in the parties' **Agreed Motion to Approve Stipulation of Settlement** [#246], filed September 1, 2006 (Stipulation).  Capitalized terms in this order refer to terms defined in the Stipulation.

In their motion for an award of attorney fees and expenses, lead counsel for the plaintiffs seek an award of attorney fees and costs based on the Stipulation. Lead counsel seeks an award of 5,995,000.00 dollars for attorney fees and costs. Lead counsel have documented the time spent by attorneys and others on this case, and they have documented the litigation costs the have incurred. However, lead counsel do not seek an award of a specific amount for attorney fees, and a specific amount for litigation costs. Rather, they seek a combined award of 5,995,000.00 dollars as compensation for both attorney fees and litigation costs. The defendants have agreed that they will not oppose a request for an award of attorney fees and litigation expenses in this amount, and they have agreed to pay such attorney fees and litigation expenses within ten days after the entry of final judgment in this case.

### C.  STANDARD OF REVIEW

The law in the Tenth Circuit requires that I consider a number of factors when determining an appropriate attorney fees award in a class action case. In determining reasonable attorney fee awards, "federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). *Johnson* was a statutory fee case. In *Brown*, the Tenth Circuit concluded that the *Johnson* factors were applicable in a common fund case, a case in which attorney fees are paid from a common fund established for the benefit of the plaintiff class. *Brown*, 838 F.2d at 454 - 455. The touchstone in both types of cases is reasonableness.

The present case is not a common fund case, nor is it a statutory fee case. Rather, the defendants have agreed to fund certain testing and remediation services for

3

the plaintiff class, and to pay attorney fees and litigation expenses to the plaintiffs' lead counsel as part of the settlement.  In this context, the touchstone of reasonableness still is applicable to an award of attorney fees.  I have considered carefully each of the twelve *Johnson* factors in determining a reasonable and appropriate attorney fees award in this case.

The twelve *Johnson* factors are 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee for similar work; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  ***Johnson v. Georgia Highway Express, Inc.***, 488 F.2d 714, 717 -719 (5th Cir. 1974), *abrogated in part by* ***Blanchard v. Bergeron***, 489 U.S. 87, 93 (1989) (limiting application of *Johnson* contingency fee factor as ceiling on fee awards when applying 42 U.S.C. § 1988).   Based on the circumstances of a particular case, a court may assign different relative weights to the factors – that is, none of the factors is inherently equiponderant, preponderant, or dispositive.  ***Brown***, 838 F.2d at 456.  As discussed below, I conclude that some of the factors should be combined for the purpose of this case.

### D.  APPLICATION OF *JOHNSON* FACTORS

**1. The time and labor involved** - Lead counsel report that counsel for the plaintiff class expended 16,515 hours of attorney time on this case.  Additionally, lead counsel report that 24,602.70 hours of paralegal and support staff time have been

4

dedicated to this litigation. *Motion for attorney fees* [#257], filed September 22, 2006, p. 4. Declarations filed in support of the motion document this figure. Based on current hourly rates, the billable value of these hours is 11,123,298.00 dollars. *Id.*, p. 5. This figure is known as a lodestar – total hours expended times the reasonable hourly rate.

      There is no doubt that the litigation of this case required a large investment of sophisticated expertise, time, labor, and other resources by lead counsel. Nothing in the record is contrary to this conclusion, and I will summarize very briefly the effort made by lead counsel. In essence, the plaintiff class asserts claims based on a widespread toxic tort. Before filing this case, lead counsel conducted an extensive investigation of the facts underlying the plaintiffs' claims. This case, filed on June 12, 2002, was litigated for more than four years along with companion cases involving essentially the same issues, The issue of class certification was litigated vigorously. Multiple experts were deposed by both sides, and ultimately the court certified a plaintiff class in September, 2004. In the course of discovery on class certification and on the merits, 55 witnesses were deposed, and hundreds of thousands of pages of documents were produced an reviewed. All of this information related to the 29 year time period during which the defendants operated the factory in Fountain, Colorado from which the groundwater contamination at issue in this case allegedly originated. In addition, settlement and mediation efforts took place over an extended period of time, and negotiation of the final settlement terms clearly required substantial talent, time, and effort. Overall, the hourly rates outlined in counsel's declarations in support of the motion for award of attorney fees are generous but within the range of reasonable hourly rates for the type of work at issue here.

I conclude that, in this case, time spend by paralegals and support staff properly may be considered as part of the first *Johnson* factor. Time spent by paralegals and other professionals frequently is billed to clients by the hour, and the assistance of such professionals is indispensable in a case like this case.

I conclude that a lodestar amount of 11,123,298.00 dollars is a reasonably accurate figure for the purpose of applying the *Johnson* analysis to this case. Having considered the record and the relevant circumstances, I conclude that the lodestar amount is an important factor in the overall reasonableness analysis because it is a tangible, determinate measure of the value of the time and labor involved.

**2. The novelty and difficulty of the questions** - This case involved complicated issues of both science and law. The parties disclosed experts in a variety of fields, including chlorinated solvent chemistry, groundwater hydrology, risk assessment and management, environmental science and engineering, and real estate appraisal and valuation. The legal issues included class definition and certification, proof of the source and history of the alleged plume of contamination, causation, and damages. Each of these issues presented difficult problems for plaintiffs' counsel. In addition, any class action presents complex and difficult legal and logistical issues which require substantial expertise and resources. Able defense counsel zealously and survigrously litigated on behalf of the defendants, and lead counsel were required to meet these challenges at most every turn. This factor, closely related to factor three, below, carries significant weight, and tends to support a generous award of attorney fees.

**3. The skill requisite to perform the legal service properly** - As noted above, this case combines class action litigation, environmental regulation, and the science

6

surrounding chlorinated solvents, ground water, and the effect of chlorinated solvents on humans. This cased required a high level of skill by all attorneys involved. Lead counsel possessed and applied such skill in this case. I have reviewed the qualifications of lead counsel, as summarized in the motion for attorney fees, and conclude that lead counsel possesses and applied the high level of skill needed in such a case to this case.

Particularly in a case as complex as this case, lead counsel must have a very high level of experience and expertise if the plaintiffs are to have any chance of success. In this case, there is no serious challenge to the conclusion that lead counsel possesses a high level of skill and expertise. This factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise. Further, lead counsel should be rewarded for their successful application of their skill and expertise. This factor augurs toward a substantial fee award.

    4.  **The preclusion of other employment by the attorney due to acceptance of the case** - Without doubt, time spent by lead counsel on this case was at the expense of time that lead counsel could have spent on other cases. Lead counsel, however, does not cite any particular legal business that was turned away because of the demands of this case. It is fair to assume, however, that lead counsel's efforts on this case could have been devoted to other cases which may have proven worthwhile. This assumption, however, does not weigh heavily in my analysis.

    5.  **The customary fee for similar work** - This factor is very similar to factor number twelve – awards in similar cases. I consider factors five and twelve together. As lead counsel notes, the attorney fee award they are seeking is only a portion of the

fair value of their work, as measured by billable hours. In other words, lead counsel are willing to accept compensation that is less than the customary fee for such work, as measured by the billable hour. Lead counsel note also that they will not be compensated for the risk involved in taking a case such as this case. In short, the proposed attorney fee award is less than the customary fee for such work, measured by the billable hour.

In their motion, lead counsel cites attorney fees awards in two recent class action cases in this district, and argues that these cases present circumstances in which similar awards were made in similar cases. ***In re: Boston Chicken, Inc. Securities Litigation***, No 97-cv-01308 (D. Colo. August 10, 2006) (Order Concerning Attorney Fees and Expenses); ***Lucas v. K-Mart Corporation***, No. 99-cv-01923-JLK-CBS (D. Colo. July 27, 2006) (order awarding attorney fees and costs). The similarities between these cases and the present case are rough but significant. Generally, these other cases present similar class action circumstances which resulted in roughly similar awards of attorney fees awards. These similarities support the award requested in this case. However, considering the circumstances of this case, the similarities between this case and the cited cases do not weigh heavily in my analysis.

      **6. Whether the fee is fixed or contingent** - Lead counsel reports that they have hundreds of contingent fee agreements with putative class members, but putative class members were advised that the court would be the sole arbiter of costs and fees if a class was certified. Lead counsel has obtained significant relief for members of the class. Viewed from the perspective of a contingent fee agreement, lead counsel is entitled to compensation because lead counsel obtained significant relief for the class. However, the weight of this factor is minimized by the fact that the relief obtained

amounts to an agreement to provide services, rather than the payment of damages. In this context, a contingent fee agreement provides less direct guidance on the issue of reasonable attorney fees, largely because the value of the services to be provided to the plaintiff class is not clearly reflected in the record.

    **7. Time limitations imposed by the client or the circumstances** - The *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium. *Id*. Lead counsel do not note any unusual time constraints imposed on them by this case. Rather, they note only the deadlines ordinarily encountered in litigation and the complexity of this case. I conclude that this case did not impose unusual time limitations on lead counsel, and that the complexity of the case and the amount of work done by lead counsel are accounted for in other *Johnson* factors discussed in this order. Thus, I conclude that the time limitations factor carries little or no weight in this case.

    **8. The results obtained** - The *Johnson* court said that the amount of damages and a decision's effect on the law both are relevant considerations when evaluating the results obtained in a particular case. Of course, the relief that can be obtained via litigation varies widely. Again, the relief obtained in this case does not involve damages, but concerns testing of the individual properties of members of the plaintiff class and, if necessary, remidiation. In applying this factor, I rely on the *Johnson* court's general guidance that an "attorney's fee award should reflect the relief granted." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718.

    Lead counsel says that the primary goal of this litigation was to achieve peace of mind concerning the safety of individual pieces of property owned by class members. The settlement provides that each home owned by a member of the class can be tested

for the presence of chlorinated solvents in the indoor air. If the level of chlorinated solvents in a home exceeds that allowed by current Colorado regulation, then that class member will be able to obtain appropriate remediation. These services will be paid for by the defendants. This settlement achieves a major portion of the relief sought by the plaintiff class because it will resolve questions about the safety of the properties owned my members of the class. The results obtained by lead counsel are substantial and favorable to the class. Absent the efforts of competent lead counsel there likely would not have been any relief for most members of the class. This factor weighs in favor of a generous fee award.

      **9. The experience, reputation, and ability of the attorneys** - This factor has been considered as part of factors two and three, above.

      **10. The undesirability of the case** - The risks presented to lead counsel who undertook this case were substantial. At a minimum, this case required lead counsel to advance large amounts of time, money, and other resources to determine if any recovery might be had. Quintessentially, the risk to lead counsel was financial. Most attorneys are unable or unwilling to take such a financial risk. There are other factors that may have made this case undesirable to counsel, but the financial risk stands out as the key factor. This factor carries significant weight and weighs in favor of a substantial fee award.

      **11. The nature and length of the professional relationship with the client** - In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer. There is no indication that lead counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs. I concur with lead counsel's

assessment that this factor has no application in this case.

    12. **Awards in similar cases** - This factor is considered as part of factor five, above.

### E. REASONABLE EXPENSES

Lead counsel have documented litigation costs totaling 2,179,708.70 dollars. I have reviewed the costs outlined in lead counsel's declarations and generally find the costs sought by counsel to be reasonable in the context of this case. Some might challenge the necessity or reasonableness of particular items among the costs claimed, but I will not engage in a detailed analysis of each item. In the end, the award of attorney fees and litigation costs sought by lead counsel will not compensate lead counsel for nearly all of the costs documented by lead counsel, assuming that a substantial portion of the total award should be seen as covering attorney fees. Again, lead counsel do not seek an award of a specific amount for litigation costs, as opposed to attorney fees, and the final allocation of the award among these two categories will be left to lead counsel. Given these circumstances, I exercise my discretion and conclude that the proposed award of 5,995,000.00 dollars to cover attorney fees and litigation costs includes a reasonable amount to cover reasonable litigation costs incurred by lead counsel.

### F. CONCLUSION

The *Johnson* factors demonstrate that lead counsel provided highly valuable services on behalf of the plaintiff class, took substantial risks, and obtained significant relief on behalf of the class. Judged by the standard of the billable hour, the lodestar value of those services is in the neighborhood of 11 million dollars, though counsel was not being paid by the hour as this case was litigated. Lead counsel incurred over two

million dollars in documented litigation costs and, overall, the documented costs are reasonable. Lead counsel seek an award of 5,995,000.00 dollars as an award of both attorney fees and litigation costs. This figure is less than half of the total lodestar figure and documented litigation costs. Applying all of the relevant considerations outlined in this order, I find and conclude that an award of 5,995,000.00 dollars for attorney fees and costs is reasonable.

## G.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That lead counsel's **Unopposed Motion for Class Counsels' Attorney Fees and Reimbursement of Litigation Expenses** [#257], filed September 22, 2006, is **GRANTED**; and

2. That lead counsel for the plaintiff class are **AWARDED** $5,595,000.00 (five million five hundred ninety-five thousand dollars) for both attorney fees and litigation costs, which award shall be paid by the defendants under the terms of the Stipulation.

Dated January 8, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**